**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CASE NO.:  2:23-CV-00822 |
| v. | |
| PARK NATIONAL BANK, | JUDGE: EDMUND A. SARGUS, Jr. |
| Defendant. | |

**CONSENT ORDER**

I.     **INTRODUCTION**

The Parties jointly submit this Consent Order for approval and entry by the Court.  The Order resolves all claims of the United States of America ("United States") simultaneously filed in a Complaint, alleging that Park National Bank ("PNB" or "the Bank") engaged in a pattern or practice of unlawful redlining in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f, Regulation B, 12 C.F.R. § 1002.1 *et seq.*, by discriminating on the basis of race, color, and national origin. Specifically, the United States alleges that PNB engaged in illegal redlining by avoiding providing home loans and other mortgage services in majority-Black and Hispanic census tracts in its Assessment Areas ("Columbus AAs" or "the AAs") under the Community Reinvestment Act ("CRA"), 12 U.S.C. § 2901 *et seq.*, located within the Columbus, Ohio Metropolitan Statistical Area ("Columbus MSA""). The United States also alleges that PNB engaged in conduct that would discourage mortgage applications from prospective applicants who are residents of or seeking credit in majority-Black and Hispanic census tracts within the Columbus AAs.

The Court has jurisdiction over PNB and the United States (collectively, "Parties") and the subject matter of this action. There have been no factual findings or adjudication in this case. The Parties enter into this Consent Order to voluntarily resolve all claims arising from the conduct alleged in the Complaint. Entry of this Consent Order is in the public interest. The Bank neither admits nor denies any of the allegations in the Complaint except that, for the purposes of this Consent Order, the Bank admits facts necessary to establish this Court's jurisdiction over it and over the subject matter of this action.

## II.    BACKGROUND

PNB is a multi-state bank headquartered in Newark, Ohio. PNB offers commercial, consumer, mortgage, and wealth management banking services. PNB operates a total of 92 full-service branches and two loan production offices in Ohio, Kentucky, North Carolina, and South Carolina, including 20 full-service branches in the Columbus MSA. PNB has total assets of $9.8 billion. Park National Bank is the sole banking subsidiary of Park National Corporation, a holding company.

By letter dated November 29, 2021, the United States notified the Bank that it was opening an investigation into whether PNB had engaged in unlawful redlining in violation of the FHA and ECOA. PNB cooperated with the United States' investigation. After conducting its investigation and reviewing information provided by the Bank, the United States contends that, between 2015 and 2021, PNB avoided serving the credit needs of borrowers in majority-Black and Hispanic census tracts in the Columbus MSA and discouraged borrowers in majority-Black and Hispanic census tracts in the Columbus MSA from obtaining mortgage loans, while acting to serve the credit needs for mortgage loans in majority-white census tracts. PNB maintains that it has never acted intentionally to avoid serving the credit needs of borrowers in majority-Black and Hispanic census

2

tracts or to discourage such borrowers from obtaining mortgage loans. PNB represents that, prior to the filing of the Complaint and Consent Order, it began implementing reforms to ensure that PNB was properly serving all of the communities in its footprint. The Parties agree that the full implementation of the terms in this Consent Order will provide a resolution to the claims asserted in the Complaint in a manner consistent with PNB's legitimate business interests.

### III. <u>TERMS OF THE ORDER</u>

#### A. Lending Practices

1.      PNB, including all of its officers, agents, servants, employees, and all other persons in active concert or participation with them who have actual notice of this Consent Order, assignees, and successors in interest, is hereby enjoined from engaging in any act or practice that discriminates on the basis of race, color, or national origin that: (a) violates the FHA in any aspect of a residential real estate-related transaction; or (b) violates ECOA and Regulation B in any aspect of a credit transaction.

2.      PNB will ensure that it offers and provides all persons with an equal opportunity to apply for and obtain credit, regardless of the demographic composition of the area in which a person lives or the location of the property securing the loan.

3.      For purposes of this Consent Order, PNB's "Columbus Lending Area" consists of the entirety of Fairfield, Franklin, Hocking, Licking, Morrow, and Perry counties in Ohio.

4.      For purposes of this Consent Order, a "majority-Black and Hispanic" census tract is one where more than 50 percent of the residents are identified as either "Black or African American" or "Hispanic or Latino" by the United States Census Bureau. A "majority-white" census tract is one where more than 50 percent of the residents are identified as "non-Hispanic white" by the United States Census Bureau.

**B. Fair Lending Compliance**

5.     The date this Consent Order is entered by the Court is the "Effective Date."  PNB has already retained an independent, third-party consultant to conduct a detailed assessment of the Bank's fair lending program in the Columbus Lending Area, specifically as it relates to fair lending obligations and lending in majority-Black and Hispanic census tracts.  PNB has produced a written report ("Fair Lending Status Report and Compliance Plan"), which it represents includes, among other things, a review of the Bank's existing fair lending policies and practices, an analysis of PNB's policies and practices related to branch locations; mortgage lenders' solicitation of applications, training, oversight, and compensation; mortgage lender recruitment, including recruitment of mortgage lenders of color; marketing; and fair lending compliance monitoring.

6.     PNB has submitted its Fair Lending Status Report and Compliance Plan described in Paragraph 5 to the United States for its review and non-objection.  The Parties agree that, in addition to addressing the topics outlined in Paragraph 5, the Fair Lending Status Report and Compliance Plan must include, at least:

    a.  A description of steps PNB has taken to revise all of the Bank's mortgage lending policies and practices that pose redlining risks, including at a minimum, risk that may arise from branch locations or assignment of mortgage lenders to office locations; types of loan products; and marketing;

    b.  The adopted written policies and procedures regarding training and monitoring the activities of mortgage lenders in marketing PNB's mortgage loan products, soliciting, and originating mortgage loans;

    c.  A description of PNB's formal process for ongoing statistical monitoring of mortgage underwriting, pricing, and redlining risk, including statistical peer

4

analysis of applications and originations from majority-Black and Hispanic census tracts; and

d.  Steps PNB will take to effectively and promptly revise its mortgage lending policies and practices to ensure compliance with ECOA, Regulation B, and the FHA.

7.      If the United States objects to any portion of PNB's Fair Lending Status Report and Compliance Plan, PNB will make revisions and resubmit its proposal within 14 days of receiving the objection. PNB will begin implementation of its Fair Lending Status Report and Compliance Plan within 14 days of receiving the United States' non-objection. Any material changes to PNB's Fair Lending Status Report and Compliance Plan are subject to non-objection by the United States.

### C.  Fair Lending Training

8.      Within 30 days of the Effective Date, PNB will provide a copy of the Complaint and Consent Order in this matter to all employees with substantive involvement in mortgage lending, marketing, or fair lending or CRA compliance, or who have management responsibility over such employees; senior management with fair lending and marketing oversight; and members of the Board of Directors (collectively, "the Relevant Bank Staff and Officials"). PNB will provide an opportunity for the Relevant Bank Staff and Officials to ask any questions concerning the Complaint and Consent Order, and the Bank will provide answers. PNB will implement a system for each individual to acknowledge that they received a copy of the Complaint and Consent Order and had the opportunity to ask questions. PNB will provide a report that includes these acknowledgements to the United States, as well as a list of all persons and their titles to whom this Consent Order was delivered within 45 days of the Effective Date.

5

9. PNB will provide training to the Relevant Bank Staff and Officials on PNB's obligations under ECOA, Regulation B, and the FHA, as well as the Bank's obligations under this Consent Order. The training will be conducted by an independent, qualified third-party trainer selected by PNB and subject to non-objection by the United States. Within 60 days of the Effective Date, PNB will submit the qualifications of the third-party trainer to the United States for non-objection. Within 60 days of receiving non-objection from the United States regarding the independent, qualified third-party trainer, PNB will submit the proposed training curriculum to the United States for non-objection. Within 30 days of receiving non-objection from the United States regarding the proposed training curriculum, PNB will deliver the training described in this Paragraph. PNB will implement a system for each individual to acknowledge that they completed fair lending training and will provide a report that includes these acknowledgements to the United States 30 days after it has delivered the training.

10. PNB will provide the training described in Paragraph 9 annually to the Relevant Bank Staff and Officials. PNB will implement a system for each individual to acknowledge that they completed fair lending training. PNB will provide a report that includes these acknowledgements to the United States within 30 days after it has delivered the training. Any proposed changes to the third-party trainer or the training curriculum are subject to non-objection by the United States.

11. Any individual who becomes a Relevant Bank Staff or Official will, within 30 days of beginning the covered position, receive a copy of the Complaint and Consent Order, with the opportunity to ask questions, as discussed in Paragraph 8. Any individual who becomes a Relevant Bank Staff or Official will, within 60 days of beginning the covered position, receive the training discussed in Paragraph 9. PNB will implement a system for each such individual to acknowledge

6

that they received a copy of the Complaint and Consent Order, were given the opportunity to ask questions, and completed the fair lending training. PNB will provide a report that includes these acknowledgements to the United States no later than 30 days after each such individual receives the fair lending training.

12. PNB will bear all costs associated with the trainings.

### D. Community Credit Needs Assessment

13. PNB will submit to the United States for non-objection a Community Credit Needs Assessment for majority-Black and Hispanic census tracts within its Columbus Lending Area. A Community Credit Needs Assessment is a research-based market study to help a lender identify the needs for financial services in an area. This assessment must include the following information about majority-Black and Hispanic census tracts within PNB's Columbus Lending Area: (1) an evaluation (to include market research and interviews) of residential mortgage credit needs and current lending opportunities available in the area; (2) recent demographic and socioeconomic data; (3) potential strategies for PNB to provide residential mortgage lending services in these census tracts; (4) a review of loan products offered by other lenders and their success in the market; (5) an overview of federal, state, and local programs that are available to residents seeking and obtaining residential mortgage loans; and (6) recommendations that address how each requirement of this Consent Order should be carried out to best achieve the remedial goals of this settlement.

14. The Community Credit Needs Assessment will be conducted by an independent, qualified third-party consultant selected by PNB and subject to non-objection by the United States. Within 60 days of the Effective Date, PNB will submit the qualifications of the third-party consultant to the United States for non-objection. Within 30 days of receiving non-objection from the United States regarding the third-party consultant, PNB must submit to the United States, for

non-objection, a statement of work from the independent third-party consultant describing their methodology for the assessment. Within 60 days of receiving non-objection from the United States regarding the statement of work, PNB will submit to the United States the Community Credit Needs Assessment described in Paragraph 13.

15.     Once the United States has non-objected to the Community Credit Needs Assessment, PNB will present the Assessment to all PNB committees responsible for overseeing fair lending compliance.

16.     Within 60 days of receiving non-objection from the United States to the Community Credit Needs Assessment, PNB will submit a remedial plan that details, in light of the recommendations made in the Assessment, the actions PNB proposes to take to comply with the requirements of this Consent Order (e.g., physical expansion, loan subsidy, community partnerships, and advertising), including specific timeframes and implementations of these actions. The proposals within the remedial plan will be subject to non-objection by the United States.

### E.  Director of Community Home Lending and Development

17.     PNB has created the full-time position of Director of Community Home Lending and Development ("Director of Community Home Lending"), who is designated with primary responsibility of overseeing the development of PNB's lending in majority-Black and Hispanic census tracts in its Columbus Lending Area.  The Bank will maintain this position throughout the term of this Consent Order.

18.     The Director of Community Home Lending is, and will be, an officer-level position that reports directly to the Director of Home Lending or similar officer.  The Director of Community Home Lending will be a member of PNB's existing Fair and Responsible Advisory Council and will assist with preparation and presentation of the reports referenced in Paragraph 49

below, as well as other submissions required under this Consent Order. The responsibilities of the Director of Community Home Lending will also include:

    a. monitoring mortgage lenders' solicitation and origination of loans in majority-Black and Hispanic census tracts in PNB's Columbus Lending Area, including the loan subsidy fund described herein;

    b. coordinating the Bank's involvement in community lending initiatives and outreach programs;

    c. encouraging and developing more lending within majority-Black and Hispanic census tracts;

    d. promoting financial education;

    e. providing financial counseling; and

    f. building relationships with community groups.

**F. Physical Expansion to Serve Majority-Black and Hispanic Census Tracts**

19. Subject to appropriate regulatory approval, PNB must establish one new mortgage loan production office ("LPO") and one new full-service branch in majority-Black and Hispanic census tracts in its Columbus Lending Area. The LPO and full-service branch must be in retail-oriented spaces in visible locations and have signage that is visible to the general public. The specific sites of the LPO and full-service branch will be subject to non-objection by the United States. The LPO and full-service branch must provide, at a minimum, the full range of mortgage products typically offered by PNB's mortgage lenders, and must maintain hours of operation equivalent to PNB's other full-service branches.

20. PNB must make all reasonable efforts to open the new LPO and full-service branch within 18 months of the Effective Date. If PNB fails to open the LPO or full-service branch within

18 months of the Effective Date, PNB will provide to the United States a written proposal describing how it will comply with Paragraph 19. PNB will maintain the new LPO and full-service branch for the term of this Consent Order.

21.     PNB will evaluate future opportunities for expansion within its Columbus Lending Area, whether by merger, acquisition, or opening new branches or LPOs, in consideration of the goals of this Consent Order and the Community Credit Needs Assessment. PNB must notify the United States of any plans to open or acquire any new branches or other LPOs within its Columbus Lending Area at the same time that it notifies its regulators.

22.     PNB has already assigned one mortgage lender to solicit mortgage applications in majority-Black and Hispanic census tracts in the Columbus Lending Area. Within 180 days of the Effective Date, PNB must assign at least three additional mortgage lenders to solicit mortgage applications in these census tracts. At least one of the assigned mortgage lenders must be Spanish-speaking. Additionally, once they are established, all four mortgage lenders will be assigned to PNB's new LPO and full-service branch in majority-Black and Hispanic census tracts in the Columbus Lending Area, with at least one of the mortgage lenders assigned to each new location. PNB must maintain the mortgage lender assignments described in this Paragraph for the term of this Consent Order.

### G. Loan Subsidy Fund

23.     PNB will invest a minimum of $7.75 million in a loan subsidy fund to increase credit for home mortgage loans, home improvement loans, home refinance loans, and home equity loans and lines of credit for consumers applying for loans in majority-Black and Hispanic census tracts in its Columbus Lending Area. No more than twenty-five percent of the loan subsidy fund may be used for home refinances. Following its non-objection to the Community Credit Needs

Assessment, the United States will determine and notify PNB of the maximum percentage of the loan subsidy fund that may be used for home equity loans and lines of credit. The loan subsidy fund will be invested in providing the subsidies to consumers described in Paragraph 24 in its entirety and will not be used to pay for the establishment of the loan subsidy fund or implementation of any associated programming.

24. Loan subsidies under the loan subsidy fund can be provided by the following means:

    a. a direct grant for the purpose of down payment assistance (when the subsidy is less than the loan balance);

    b. a direct grant for the purpose of closing cost assistance;

    c. payment of mortgage insurance premiums on loans subject to such mortgage insurance;

    d. life of loan interest discount payments and/or points that are in the range of generally prevailing rates (the intent of which will be to reduce the interest rate below market); and

    e. any other appropriate assistance measures approved by the United States in writing.

The combined forms of subsidies set forth in this Paragraph cannot exceed $15,000 per qualified applicant unless PNB receives a non-objection from the United States to increase that amount.

25. Under the loan subsidy fund, PNB will subsidize loans made to "qualified applicants." A "qualified applicant" is any applicant who: (a) applies for a home mortgage, home improvement, home refinance, or home equity loan or line of credit for a residential property located in a majority-Black and Hispanic census tract in the Columbus Lending Area that will

serve as the applicant's primary residence or (b) is qualified to participate in a Special Purpose Credit Program consistent with the goals of this Subsection and subject to the non-objection of the United States. A qualified applicant must in all cases be qualified for a home mortgage, home improvement, home refinance, or home equity loan or line of credit under PNB's underwriting standards. PNB will retain discretion to offer more than one, or all, of the forms of assistance described in Paragraph 24 to qualified applicants on an individual basis as it deems appropriate subject to regulatory requirements. In any case, PNB will offer qualified applicants the choice of at least two such forms of assistance from which they may select.

26. No provision of this Consent Order, including any loan subsidy or equivalent program, requires PNB to make any unsafe or unsound loan or to make a loan to a person who is not qualified for the loan based upon lawful, nondiscriminatory terms; however, PNB may choose to apply more flexible underwriting standards in connection with its programs under this Consent Order. PNB's underwriting standards applied to residents of majority-Black and Hispanic census tracts must be no less favorable than the standards applied in majority-white census tracts.

### H. Community Development Partnership Program

27. PNB will partner with one or more community-based or governmental organizations that provide the residents of majority-Black and Hispanic census tracts in the Columbus Lending Area with services related to credit, financial education, homeownership, and foreclosure prevention. PNB will develop these partnerships in a manner consistent with achieving the goals of this Consent Order. Through these partnerships, PNB must spend a minimum of $500,000 over the term of this Consent Order on services to residents of majority-Black and

Hispanic census tracts in the Columbus Lending Area that increase access to residential mortgage credit.

28.     Within 180 days of the Effective Date, PNB will submit a proposal to the United States describing how it will implement the requirements of Paragraph 27.  The proposal will include an explanation of its proposed partner(s).  The proposal should also describe, to the extent available, PNB's plans to implement the partnership(s), as well as a description of how the partnership(s) will be used to meet the credit needs identified in the Community Credit Needs Assessment.  The proposal will be subject to non-objection by the United States.

29.     PNB will evaluate the partnership(s) outlined in Paragraph 27 annually, including by considering the Community Credit Needs Assessment, in order to identify any needed changes to the program or better assist residents of majority-Black and Hispanic census tracts in the Columbus Lending Area in obtaining credit.  PNB will present a summary of its evaluation and any proposed changes to the United States as part of its annual reporting requirement under Paragraph 44.  Any proposed changes will be subject to non-objection by the United States.

## I.  Advertising, Community Outreach, Consumer Financial Education, and Credit Counseling Initiatives

30.     PNB will spend at least $150,000 per year on the advertising, outreach, consumer financial education, and credit counseling in the Columbus Lending Area described in this Subsection.

31.     Within 180 days of the Effective Date, PNB will submit an Advertising, Outreach, and Education Plan ("Outreach Plan") to the United States detailing how it will spend these funds for the period remaining in the term of this Consent Order.  The Outreach Plan will include an explanation of why PNB selected certain approaches and community partnerships and how the Bank's advertising, community outreach, education, and credit counseling initiatives will meet the

credit needs identified in the Community Credit Needs Assessment. The Outreach Plan will be subject to non-objection by the United States. If the United States objects to any portion of the Outreach Plan, PNB will make revisions and resubmit its proposal within 14 days of receiving the United States' objection. PNB will begin implementation of its Outreach Plan within 14 days of receiving non-objection from the United States.

32.    PNB will evaluate the strategies outlined in its Outreach Plan annually, including by considering the Community Credit Needs Assessment, in order to identify any changes necessary to better assist residents of majority-Black and Hispanic census tracts in its Columbus Lending Area in obtaining credit. PNB will present a summary of its evaluation and any proposed changes to the United States as part of its annual reporting requirement under Paragraph 44. Any proposed changes will be subject to non-objection by the United States.

### i. Advertising

33.    PNB will advertise its residential loan products, including products for which the loan subsidy fund outlined in Section III.G will be applied, to majority-Black and Hispanic census tracts in its Columbus Lending Area and will target advertising to generate mortgage loan applications from qualified applicants in these census tracts. PNB's advertising may include print media, radio, Internet advertising, television, direct mail, and any other appropriate medium non-objected to by the United States in writing. These advertisements must include similar information to other advertisements by the Bank. PNB must advertise its mortgage lending services and products to majority-Black and Hispanic census tracts in its Columbus Lending Area at least to the same extent that it advertises its mortgage lending services and products to majority-white census tracts in its Columbus Lending Area. PNB's advertising under this Subsection must include Spanish-language advertising.

34.     PNB will create point-of-distribution materials, such as posters and brochures, targeted toward majority-Black and Hispanic census tracts to advertise its products and services. PNB will place or display these promotional materials in its branch offices.

35.     All of PNB's print advertising and promotional materials referencing residential mortgage loans will contain an equal housing opportunity logo, slogan, or statement. All radio or television advertisements will include an audible statement that PNB is an "Equal Opportunity Lender" or "Equal Housing Lender."

### ii.  Outreach

36.     PNB will provide at least four outreach programs per year for real estate brokers and agents, developers, and public or private entities engaged in residential real estate-related business in majority-Black and Hispanic census tracts in its Columbus Lending Area to inform them of its products and services and to develop business relationships.

37.     PNB may underwrite or sponsor non-profit events in support of the majority-Black and Hispanic census tracts in its Columbus Lending Area that are related to building relationships within those areas and designed to generate applications for home mortgages. Any use of the funds described in Paragraph 30 to underwrite or sponsor such events must be approved in advance by the United States.

### iii.  Consumer Financial Education and Credit Counseling

38.     PNB will develop a consumer education program designed to provide information, training, and counseling services about consumer finance to individuals in majority-Black and Hispanic census tracts in its Columbus Lending Area.

39.     PNB will provide a minimum of five seminars per year targeted toward residents in majority-Black and Hispanic census tracts in its Columbus Lending Area. These seminars will

cover credit counseling, financial literacy, first-time homebuyer, and other related education, and must be designed to identify and develop qualified loan applicants from those areas. PNB must provide translation and interpretation services as needed for attendees of these seminars who are Spanish-speaking.

40.     PNB may develop and provide the consumer education seminars described in Paragraphs 38 and 39 in conjunction with the community-based or governmental organization(s) that PNB partners with as described in Section III.H.

41.     Beginning after the Effective Date and during the first year of the term of this Consent Order, PNB may conduct the outreach programs and consumer education seminars described in Paragraphs 36, 38, and 39 by hosting in-person events offered at a location reasonably convenient to the attendees or by hosting virtual events. Beginning 12 months after the Effective Date, PNB will submit to the United States a list of its planned outreach programs and consumer education seminars, specifying whether those events will be in-person or virtual, as part of its annual reporting requirement under Paragraph 44. The virtual nature of these programs and seminars will be subject to non-objection by the United States.

## IV.    EVALUATING AND MONITORING COMPLIANCE

42.     PNB will retain all records related to its obligations under this Consent Order and all activities to carry out this Order. The United States has the right to review and copy these records upon request.

43.     Every year, within 30 days of its submission of data to the Federal Financial Institutions Examination Council in accordance with the Home Mortgage Disclosure Act of 1975, 12 U.S.C. §§ 2801–2811, PNB will provide this data to the United States in the same format, including the record layout.

44.     Beginning 12 months after the Effective Date, PNB will submit annual reports to the United States on its progress in complying with the terms of the Consent Order and associated plans and programs.  The final report will be delivered to the United States at least 60 days prior to the expiration of the Consent Order.  The reports will provide a complete account of PNB's actions to comply with the Consent Order, PNB's assessment of the extent to which each obligation was met, an explanation of why PNB fell short of meeting its goals for any particular component, and recommendations for additional actions to achieve the goals set forth in this Consent Order and associated plans and programs.  With each report, PNB will attach copies of any training materials and advertising and marketing materials distributed under this Consent Order since the prior report.  PNB's Board of Directors and Chief Executive Officer will review and approve the reports prior to submission to the United States.  If the United States raises any objections to a report, the Parties will have 14 days to confer and resolve their differences.  The Parties may mutually agree to additional time to confer, if necessary.  If the Parties are unable to resolve their differences, either party may bring the dispute to the Court for resolution.

45.     All material required by this Consent Order will be sent to the United States by email to the Department of Justice attorney(s) assigned to this matter, and by commercial overnight delivery service addressed as follows:

> Chief, Housing and Civil Enforcement Section
> Civil Rights Division, U.S. Department of Justice
> 150 M Street NE, 8th Floor
> Washington, D.C. 20002
> Attn: DJ# 188-58-18
>
> Chief, Civil Division
> U.S. Attorney's Office, Southern District of Ohio
> 303 Marconi Boulevard, Suite 200
> Columbus, OH 43215
> Attn: USAO 2021V00782

## V.     ROLE OF THE FAIR AND RESPONSIBLE PROGRAM ADVISORY COUNCIL

46.     PNB has already established a Fair and Responsible Program to monitor the Bank's fair lending risks and advance its products and services in communities within PNB's Assessment Areas under the CRA.  The Fair and Responsible Program Advisory Council ("Fair and Responsible Council" or "Council") includes executive-level leadership and oversees the activities of the Fair and Responsible Program.  The Director of Community Home Lending, described in Paragraphs 17 and 18 above, will be added as a member of the Fair and Responsible Council and will have responsibility for assisting the Council with its requirements under this Consent Order. The Bank's Director of Community Home Lending, Chief Executive Officer, and Chief Retail Officer will remain members of the Fair and Responsible Council for the duration of this Consent Order.

47.     The Fair and Responsible Council will review all submissions (including plans, reports, programs, policies, and procedures) required by this Consent Order prior to submission to the United States.

48.     Until the termination of this Consent Order, the Fair and Responsible Council will be responsible for monitoring and coordinating PNB's adherence to the provisions of this Consent Order.

49.     The Fair and Responsible Council will provide quarterly updates to the Board of Directors on the steps PNB has taken and plans to take to comply with this Consent Order.  These quarterly updates to the Board of Directors will be attached to each annual report to the United States required by this Consent Order and will include, but are not limited to, the following:

a. reporting on PNB's residential mortgage lending performance in the majority-Black and Hispanic census tracts within the Columbus Lending Area and a comparison of the Bank's applications and originations to institutions in the Columbus Lending Area with a similar volume of residential mortgage lending activity; and

b. all items listed under Paragraph 18 as responsibilities of the Director of Community Home Lending.

## VI.   <u>ADMINISTRATION</u>

50.     The requirements of this Consent Order will remain in effect for five years, except as provided in Paragraph 51.

51.     If, within five years of the Effective Date, PNB has not invested all money in the loan subsidy fund described in Section III.G, this Consent Order will remain in full effect until three months after PNB has invested all the money in the loan subsidy fund and has submitted a final report to the United States that demonstrates the fulfillment of this obligation.

52.     PNB will maintain all documents and records necessary to demonstrate full compliance with this Consent Order, including all submissions made to the United States, until the requirements of Paragraphs 50 and 51 are fulfilled.

53.     PNB must make the documents identified in Paragraph 52 available to the United States upon the United States' request.

54.     Any time limits for performance may be extended by mutual written agreement of the Parties. Other modifications may be made only upon approval of the Court, by motion by any party. If there are changes in material factual circumstances, the Parties will work cooperatively to discuss and attempt to agree to proposed modifications to this Consent Order.

55.     If disputes arise about the interpretation of, or compliance with, this Consent Order, the Parties will endeavor in good faith to resolve any dispute before bringing it to the Court for resolution.  If PNB violates any provision of this Consent Order or fails to perform an act required by this Consent Order, the United States may move the Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

56.     Nothing in this Consent Order excuses PNB's compliance with any currently or subsequently effective provision of law or order of a regulator.

57.     PNB will notify the United States of any development that may materially affect compliance obligations arising under this Consent Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Consent Order; the filing of any bankruptcy or insolvency proceeding by or against PNB; or a change in PNB's name or address.  PNB will provide this notice as soon as practicable after learning about the development.

58.     Within 10 days of the Effective Date, PNB will:

    a.  designate at least one telephone number and email, physical, and postal address as points of contact, which the United States may use to communicate with PNB;

    b.  identify all businesses for which PNB is the majority owner, or that the Bank directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; and

    c.  describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

59. PNB will report any change in the information required to be submitted under Paragraph 58 as soon as practicable, but in any case, at least 30 days before the change.

60. This Consent Order is binding on PNB, including all of its officers, agents, servants, employees, and all other persons in active concert or participation with them who have actual notice of this Consent Order, assignees, and successors in interest. If PNB seeks to transfer or assign all or part of its operations to a successor or assign that intends to carry on the same or similar business, the Bank will obtain the written agreement of the successor or assign to the obligations under this Consent Order as a condition of sale, merger, or other transfer.

61. The Parties agree that litigation is not reasonably foreseeable. If any party implemented a litigation hold to preserve information, the party is no longer required to maintain it. Nothing in this Paragraph relieves either party of any other obligations imposed by this Consent Order.

62. The Parties to this Consent Order will bear their own costs and attorneys' fees.

63. The Court will retain jurisdiction over this civil action to enforce the terms of this Consent Order.


**IT IS SO ORDERED** this 2nd day of March, 2023.


s/Edmund A. Sargus, Jr.

_____

United States District Court Judge

FOR THE UNITED STATES OF AMERICA:


Dated:  February 27, 2023

Respectfully submitted,


KENNETH L. PARKER                    KRISTEN CLARKE
United States Attorney               Assistant Attorney General
Southern District of Ohio            Civil Rights Division




*/s Andrew M. Malek*                 */s Jaclyn A. Harris*
ANDREW M. MALEK                      SAMEENA SHINA MAJEED
Civil Chief                          Chief
BRANDI M. STEWART                    JON M. SEWARD
Deputy Civil Chief                   Principal Deputy Chief
MICHAEL J.T. DOWNEY                  JACLYN A. HARRIS
Assistant U.S. Attorney              Trial Attorney
United States Attorney's Office      Housing and Civil Enforcement Section
Southern District of Ohio            Civil Rights Division
303 Marconi Boulevard, Suite 200     U.S. Department of Justice
Columbus, Ohio 43215                 950 Pennsylvania Avenue NW
Telephone:  (614) 469-5715           Washington, DC 20530
Emails:                              Telephone:  (202) 305-5944
Andrew.Malek@usdoj.gov               Facsimile: (202) 514-1116
Brandi.Stewart@usdoj.gov             Email:
Michael.Downey@usdoj.gov             Jaclyn.Harris@usdoj.gov

                                     Attorneys for Plaintiff
                                     United States of America

FOR DEFENDANT PARK NAT[ONAL BANK:

Dated:  Febrnary 27, 2023

BENJAMIN C. GLASSMAN
Partner
G. LUKE BURTON
Senior Associate
ELIZABETH P. HELPLING
ERICA M. VAN HEYDE
Associates
Squire Patton Boggs (US) LLP
201 E. Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone:  (513) 361-1248
Emails:
benjamin.glassman@squirepb.com
luke.burton@squirepb.com
elizabeth.helpling@squirepb.com
erica.vanheyde@squfrepb.com

Attorneys for Defendant
Park National Bank